# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| Brandon M. Council<br>Plaintiff - Appelant | ) | |
| v. | ) | No. 26-1772 |
| Thomas J. Watson<br>Gina Sacchetti<br>Defendants - Appellees | ) | |

U.S.C.A. — 7th Circuit
RECEIVED
SEP 21 2026

| ORIGINATING CASE INFORMATION |
|---|
| District Court No. 2:21-CV-00302-JPH-MKK |
| Southern District Of Indiana, Terre Haute Division |

# APPELANT BRIEF

According to Federal Rules of Civil Procedure 56 (a), the United States District Court significantly errored, when it both denied the Plaintiffs Motion For Summary Judgment, and Granted the Defendants Motion For Summary Judgment, despite the fact that the Plaintiff demonstrated the existence of multiple genuine disputes to material facts, and the Defendants presented no evidence, in their defaulted motion, opposing the Plaintiffs Motion For Summary Judgment, which

demonstrated that there was a genuine dispute to a material fact, and that the Plaintiff was not entitled to favorable judgment as a matter of law. The premise behind why I have filed this Appeal is because the evidence that I cited in both my Motion For Summary Judgment, and my Motion Opposing the Defendants Motion For Summary Judgment were not, and could not have been impartially considered, or circumspected by the United States District Court. One of the cardinal genuine disputes to a material fact that was argued in the Plaintiffs Brief Opposing the Defendants Motion For Summary Judgment was the Defendants Statement of Facts Not In Dispute # 11, which proclaims "Staff psychologist conduct mental status examinations of all inmates incarcerated in the Special Confinement Unit." Had the United States District Court thoroughly or sufficiently read what I contended, or reviewed the cited evidence, the United States District Court would have seen that there is a genuine dispute to a material fact, because the Defendants allege that a mental status examination is conducted every 30 days, yet the Plaintiffs Mental Health records show no existence of any testing. According to Merriam Websters Dictionary and many other well recognized English language authorities, the word examination means - A set of questions or exercises; testing; test or check the condition of health. When the United States District Court

failed or refrained from actually relying on the cited materials submitted to the Court, the United States District Court inadvertently or intentionally allowed a significant Genuine Dispute to a Material Fact to be disregarded, or go undetected, despite the Plaintiffs evidence within his Psychology records that unequivocally prove that there is no documentation or evidence of the Defendant Dr. Gina Sachetti ever performing any form of psychological examination. The United States District Court Could have, a should have thoroughly reviewed the Plaintiffs cited materials which included the 76 pages of Psychology Records to confirm that there is a genuine dispute to a material fact which would prevent a party from being entitled to Summary Judgment. The dispute is whether or not the Defendant has performed a mental health examination and whether or not what the Defendant has alleged-is an examination. So regardless of how the United States District Court assimilates the word examination, or the parties arguments, there is still the existence of a genuine dispute to a material fact because the Psychology records are "Res Ispa Loquatur." They speak for themselves, and unfortunately for the defendants, they do not verify that a test has ever been performed or conducted by the defendant. As indicated in the complaint, the relevance of this issue pertaining to psychological evaluations comes from Defendant Dr. Gina Sacchetti

denying that she failed to provide a psychological evaluation to the plaintiff so that I could receive the psychological medication that I have requested to be prescribed, but still not provided. The United States District Court explicitly stated in its Standard of Review, "When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party." Although the United States District Court correctly quoted the appropriate procedure for reviewing the parties motions for Summary Judgment the actual facilitation of this judiciary obligation was not accomplished. The United States District Court literally did not perform the necessary task of reviewing the 76 pages of the plaintiffs psychology records to confirm which parties contention was infallible and which parties contention was indefensible. Document 199 filed on 5/30/25 pg I.D # 1958 clearly expressed that, "The defendants use of the term "examination" clearly attempts to hoodwink the United States District Court into believing that a test has been performed. However the plaintiffs 76 pages of psychology records that the defendants have submitted in support of their motion for summary judgment demonstrate no documented or alleged psychological testing."

Document 199 pg I.D 1959 informed the United States District Court that, "As the court is aware a psychological examination and psychological evaluation are synonomous terminologies, and the defendants have mendaciously proclaimed that Dr. Gina Sacchetti has performed testing that she never performed, or documented." Document 199 pg. I.D 1959 also states to the United States District Court that, " The idea of performing a psychological examination every 30 days would require evidence of testing, such as questions, responses, and indicating to the examined that the purpose of your interaction was to conduct an examination of the patients mental status or capacity, which none of the plaintiffs psychology records indicate." All the United States District Court had to do was check the records which were cited by the plaintiff, to confirm whether evidence of testing existed. The United States District Court asserted on 3/17/26 Document 215 that, "A court only has to consider the materials cited by the parties, it need not scour the record for evidence that might be relevant." In light of this assertion made by the United States District Court, it is reasonable to presume that the United States District Court did not, and would not scour, or meticulously review the 76 pages of cited Psychological records before it ruled on the parties motions for summary judgment. Statement # 14 of of the Defendants Motion for Summary Judgment was also disputed by the Plaintiff, and the United States District

Court also failed to detect and discover this second genuine dispute to a material fact. So as it pertains to this second dispute to a material fact, which is similar, if not identical to the pertinent facts which were disputed in the Defendants Statement # 11, Statement # 14 proclaims, "Because the Plaintiff was Incarcerated in the Special Confinement Unit, Psychology Services conducted mental status examinations every 30 days." Document 199 pg. I.D 1960 states, "Once again it is imperative that the United States District Court be reminded that the term examination was explicitly expressed in statements #11, and # 14. The plaintiffs psychology records contain no documentation or actual results from psychology examinations that Dr. Sacchetti would like the court to believe that she performed at 30 day intervals. In fact, there are no test included in the plaintiffs psychology records to indicate that a psychology test, or examination, was at anytime ever performed by Dr. Gina Sacchetti, or at 30 day intervals. To assess means to evaluate, but without testing someone, prior to evaluating them, there is reason to doubt the validity of the conclussions drawn by the assessment." If I may briefly digress from this argument, the reason why the United States District Court was deceived by the defendants argument that implies that Dr. Gina Sacchetti performed psychological examinations is because the judge would not adhere

to my request for him to examine the 76 pages of Psychology Records. In my motion for Summary Judgment, document 194 pg. I.D # 1666, I explictly informed the United States District Court, "In Dr. Gina Sacchettis' answers to the Second and Third Amended Complaints, Dr. Gina Sacchetti has consistently lied and denied about her alleged failure to provide the Plaintiff with a psychological evaluation so that he may be prescribed psychotropic medication. In Dr. Sacchettis answer to the Second Amended Complaint, (Document 43 filed 4-29-22, pg I.D #273) Dr. Sacchetti alleged that she offered a psychological evaluation to the Plaintiff but he declined to accept it. The Psychology Discovery records of the Plaintiffs medical history while at the Terre Haute Special Confinement Unit unequivocally prove that Dr. Sacchettis allegation is mendacious because there is no documentation on any date that verifies that Dr. Sacchetti offered, or attempted to offer the Plaintiff a Psychological evaluation, and he refused or declined to participate in a psychological evaluation administered by Dr. Sacchetti." The germane aspect of this information is that the United States District Court did not invest the Plaintiff with the reasonable inference drawn from the Psychology records in favor of the nonmoving party, which according to the United States District Court is a mandatory obligation of the Courts Standard Review of all Motions For Summary Judgment.

The hoodwink that I alerted the United States District Court to is that just because records say one thing, doesn't mean that they are in fact accurate, honest, or infallible. My psychology records do dissimulate that Dr. Sacchetti has assessed me-on paper, however the facts beneath the surface level incontrovertibly disprove Dr. Sacchetti's sworn declaration that she has actually conducted any type of examination, which means test. By the United States District Court failing to review the cited Psychology records, and professional position, that he is not required to scour the record for evidence that might be relevant, the United States District Court did not seek the truth that was presented to demonstrate the existence of multiple genuine disputes to material facts. The only way for the United States District Court to determine if what I was saying is true about Dr. Sacchetti not providing me a psychological examination for the sole purpose of being prescribed psychotropic medication, is by reading and reviewing the 76 pages of cited Psychology records. In addition, the only way for the United States District Court to discover if Dr. Sacchetti's sworn answer to the complaint constitutes deceit, dishonesty, or perjury, is if he reads the Psychology records to see if Dr. Sacchetti did in fact document anything which either indicates the Plaintiff had been offered a Psychological Evaluation to be prescribed medication, or as Dr. Sacchetti alleges in her answer to

the Second Amended Complaint in document 43 I.D. # 273. "that I declined to accept it." The issue that I bare before the United States Court of Appeals for the Seventh Circuit is that I asked the United States District Court to review the entirety of my Psychology records because -whats not there- is the proof of whose version of events is true! The irrefutable fact still remains, that my Psychology records show no evidence of examinations, and they also show no evidence of my specifically being offered any Psychological evaluation to be prescribed psychotropic medication, and my refusing to take it. The only way to prove these allegations would ultimately require reviewing, or scouring the cited materials which the United States District Court failed, or refused to do. In Statement # 29 of the Defendants Motion For Summary Judgment, the Defendants allege that, "On December 21st 2021, Dr. Sacchetti personally contacted Health Services to inform them of Plaintiffs repeated request for psychiatric medication." The United States District Court was informed of this genuine dispute to a material fact in Document 199 pg I.D# 1962. Records are an almost infallible way of demonstrating, or manipulating information, and the strongest and most sufficient way to determine this third genuine dispute, is by considering the parties cited materials, and drawing all rational and reasonable

inferences from the cited materials in the light most favorable to the nonmoving party. Based upon information and belief, the United States District Court declined from facilitating this cardinal Standard of Review procedure, which requires the Court to draw all reasonable inferences in the light most favorable to the nonmoving party, because the United States District Court failed to detect or determine that the Defendants Statement # 29 was indeed a most significant genuine dispute to a material fact, that would prevent the United States District Court from granting Summary Judgment to the Defendants." As evidence that disputes that Dr. Gina Sacchetti personally contacted Health Services on December 21st 2021, of Plaintiffs repeated request for psychiatric medication." I explicitly informed the United States District Court, in Document 199 pg I.D # 1962 that, " The Plaintiff disputes this statement because there is no indication or documentation in the plaintiff's 152 pages of medical records that was submitted by the Defendants, in their motion for summary judgment that can confirm, or verify that Defendant Gina Sacchetti ever spoke to, or contacted anyone in U.S.P. Terre Haute Health Services about the plaintiffs repeated request for psychiatric medication." The plaintiff further elaborated to the United States District Court in Document 199 pg I.D # 1962 " that there is no entry whatsoever

by Terre Haute Health Services on December 21st 2021." In document 199 pg. I.D # 1965, the plaintiff informed the United States District Court that," Supporting evidence that statement # 29 is not true, is the plaintiffs medical records on December 9th 2021 (DEF-000095) and January 1st 2022 (DEF-000094), which prove that there is no documentation in the plaintiffs medical records that states, or confirms that Dr. Gina Sacchetti <u>spoke</u> with anyone employed as a Terre Haute Health Services staff member about the plaintiffs repeated request for psychological medication on December 21st 2021. In document 199, pg I.D # 1963, I explained to the United States District Court that," The document that Defendant Gina Sacchetti has submitted as evidence to her alleged Communication with U.S.P. Terre Haute Health Services on December 21st 2021 is fraudulent, and cannot be verified by a U.S.P. Terre Haute Health Services Staff member because Dr. Sacchetti would not, and did not identify the persons name who she allegedly spoke to." Furthermore, I specifically expressed to the United States District Court in document 199 pg I.D # 1964 that," It is imperative that the United States District Court realize and be informed that the fabricated document titled "Consultation - Health Services" is not a letter to Health Services, E-mail to Health Services, or Declaration." The

United States District Court failed to assimilate that the record being disputed which is (DEF-000245) titled "Consultation - Health Services" never went beyond the Psychology Department. Psychology records and medical records are two parts to one whole entity. The confusion on behalf of the United States District Court was its belief that the manufactured mendacious document was actually seen by a medical practitioner in the U.S.P. Terre Haute Health Services Department. At no time in the Plaintiffs medical records history, do the plaintiffs records indicate that U.S.P Terre Haute, Health Services received any formal notification that the Defendant contacted them about the plaintiffs repeated request for psychological medication on December 21st 2021, or at any other specified time. Perhaps the defendant Dr. Gina Sacchetti did have honest intentions to relay the plaintiffs repeated request for psychological medication to U.S.P. Terre Haute Health Services staff, but in light of the erroneous method utilized and lack of credible verification or evidence to demonstrate that this information was submitted to U.S.P. Terre Haute Health Services, this genuine dispute to a material fact was detected by the plaintiff, demonstrated to the court, and ultimately disregarded by the United States District Courts erroneous finding that there was no genuine dispute to a material fact in the Defendants Statement # 29.

The Fourth and final statement that was disputed by the plaintiff, in the defendants motion for summary judgment, is statement # 30. Before I expound on the specifics related to statement # 30, I believe it is behooving for me to express to the United States Court Of Appeals For The Seventh Circuit, that although I only presented argument and evidence to dispute 4 material facts in my motion opposing the defendants motion for summary judgment, I collectively disputed the remaining 45 statements upon the premise that those statements does not meet the criteria for summary judgment material facts that are relevant, demonstrative, or evidence that statements or allegations within the Third Amended Complaint are not true. The United States District Court was notified of this collective dispute in Document 199 pg. I.D. # 1958, and did not take into its consideration this collection of disputes, nor did it formally acknowledge whether or not any of the 45 collectively disputed material facts meet the criteria which constitute material facts under summary judgment review. As it pertains to the defendants statement # 30, statement # 30 proclaims, "Psychology staff is not required to be, and is usually not involved in the decision to place an inmate on psychiatric medication." In document 199 pg I.D # 1966 I informed the United States District Court that statement # 30 is being disputed because, "A mandatory prerequisite

prior to being prescribed psychiatric medication is to be psychologically evaluated to determine if psychiatric medication is needed, or what type of psychiatric medication would best treat the prisoners symptoms. In answer to the Second Amended Complaint, Defendant Gina Sacchetti informed the United States District Court on 4-29-22 that Defendant Sacchetti denies that she failed to provide a psychological evaluation to the plaintiff so that the plaintiff could receive the psychological medication that he requested to be prescribed, but observes that the Plaintiff has been offered such an evaluation but declined it." The plaintiff also informed the United States District Court in document (199 pg I.D # 1966) that "As an answer to an allegation in the complaint, the defendants response is not admissable evidence of facts, but this statement is meant to be evidence of facts that Defendant Gina Sacchetti intended to prove to the United States District Court that she did provide the plaintiff with a psychological evaluation so that the plaintiff could receive psychological medication, which demonstrates that psychology staff are not only required to provide individuals requesting psychiatric medication a psychological examination, but that they are in fact usually and automatically involved in the decision to place an inmate on psychiatric medication despite the fact that they cannot actually prescribe medication."

One of the most significant aspects of this dispute of material facts that the United States District Court miscontrued, or disregarded is the logical inference of this information which is a mandatory benefit given to a nonmoving party in Summary Judgment reviews. The information and insight that I gave to the Court reveals that Statement # 30 is disproven by the defendants own admission in answer to the complaint. By the defendant proclaiming that she offered the plaintiff a psychological examination so that the plaintiff could receive psychological medication, she is obligated to prove to the court by admissable evidence that she not only offered the plaintiff the appropriate psychological examination, but she must also prove to the court with admissable evidence that I allegedly declined it. Once again, had the United States District Court thoroughly reviewed my cited materials within my Brief Opposing the Defendants Motion For Summary Judgment, this error by the court wouldnt have resulted in this complex and complicated appeal of the United States District Courts Order Granting the Defendants Motion For Summary Judgment. As shocking as this may seem, the United States District Court has made even greater errors than the ones I've alleged as it pertains to genuine disputes to material facts. The afortiori problem with the United States District Courts ruling is that

the United States District Court errored in the Prison Litigation Reform Act screening process and utilized immaterial, presumptively prejudicial bias towards me when expounding upon the basis and specifics for how, and why, the United States District Court arrived at its judiciary conclussion, granting to defendants, motion for summary judgment. The United States District Court acknowledges and admits to two categories of claims in (document 219, pg I.D # 2080); that were assessed in the Courts screening of the complaint under the 8th Amendment. Although the United States District Court choose to construe the complaint accurately upon the theory of deliberate indifference, the United States District Court did not accurately construe the category of which type of dileberate indifference the claims criteria met. The Court ordered that the complaint be construed upon the 8th Amendment deliberate indifference to a significant medical need, unstead of the 8th Amendment deliberate indifference to an unreasonable risk of harm. Although the claims are similar, due to deliberate indifference, the distinction is that one of those claims does not involve medical malpractice or deprivation to medical treatment. The United States District Court errored when it choose to screen the complaint under the incorrect 8th Amendment claim, which is not a harmless error, due to the specifically made allegations within the complaint, articulating

explicitly why each defendant was party to the complaint. What I'm trying to establish to the United States Court Of Appeals, For The Seventh Circuit, is that the United States District Court manipulated, and misinterpreted my complaint. Whether this was an inadvertent, or intentionally malicious and prejudice act is irrelevant to the point of determining whether or not the correct 8th Amendment claim was procedurally applied to the complaint. The United States District Court was specifically notified of the distinction in the Plaintiff's Memorandum Of Law In Support Of Motion For Summary Judgment, (document 195 pg I.D # 1673), which states, " Eighth Amendment Right to decent conditions." Prison Officials violate the Eighth Amendment when they act with deliberate indifference to a prison condition that exposes a prisoner to an unreasonable risk of serious harm, or deprives a prisoner of a basic human need."; prior to the United States District Courts Order, granting the defendants motion for summary judgment. As the United States Court of Appeals will see by reviewing the complaints verbatim text, the defendants were not being sued because of the plaintiffs desire to be prescribed psychotropic medication, and being denied medication, the defendants were named parties to the complaint because of the prison conditions that subjected the plaintiff to an unreasonable risk of both

physical and psychological harm, that both defendants were aware of, and both did absolutely nothing about. Because the United States District Court errored in its screening assessment of the Second and Third Amended Complaints, the sublime and cardinal aspects of this case were deflected, and the focus became primarily centered upon my not being provided psychological medication, or a psychological evaluation so that I could be prescribed psychological medication, instead of the unreasonable risk of physical and psychological harm, and the defendants deliberate indifference to a-typical prison conditions. Furthermore, the United States District Court and the Assistant United States Attorney who represented the defendants in this litigation, cunningly, and deceitfully deflected the conditions of confinement issue which was raised in my case. by misdirecting the issue I presented. The United States District Court, and Assistant United States Attorney, deliberately deflected the issue of my being subjected to torture, and proceeded to only address my conditions of confinement in an inconsistent, and incompatible perspective that ignores the harm I was subjected to, and focuses on my placement in the U.S.P. Terre Haute Special Confinement Unit. Both the United States District Court and the Assistant United States Attorney proceeded to utilize this manipulated analysis tactic to defend

the actions of the defendants. The United States District Courts verbatim language in (document 215, pg I.D # 2080) states, "Defendants argue that Mr. Council's claim based on his placement in the S.C.U. adversely impacting his mental health cannot proceed under Bivens." "The Court concludes that Mr. Councils claim based on allegations that placement in the S.C.U. adversely impacted his mental health cannot proceed under Bivens." The court intentionally followed the deceitful and cunningly devised misdirection presented by the Assistant United States Attorney, by acquiescing to the fallacious defense presented, that attempts to change the subject from harm, to placement in the S.C.U. The Defendants defense was to switch topics from torture, to placement in the S.C.U. As the United States Court of Appeals for the Seventh Circuit can see in multiple documents, the defendants defense to the plaintiff's subjection to physical and psychologically harmful conditions of confinement in their motion for summary judgment is that; it was not their decision to place the plaintiff in the S.C.U., which clearly is irrelevant, and immaterial to the allegations set forth in the Second and Third Amended Complaints, that alleges subjection to torture that has caused irreparable physical and psychological harm, in document 101 pg. I.D # 486.

In summation of the argument that the United States District Court errored when it inaccurately assessed my Second and Third Amended Complaints, the text of the complaint incontrovertibly demonstrates that medical treatment has nothing to do with the allegations within the complaint. Document 101, pg I.D # 486, and 488, specifically state and declare why each Defendant is party to the complaint. Document 101, pg I.D # 486 states," Mr. Watson is party to this complaint because he failed to provide an appropriate remedy to issues regarding physical and psychological harm, pertaining to my current and ongoing conditions of solitary confinement. Document 101, pg I.D # 488 states," Mrs. Gina Sacchetti is party to this complaint because she has failed to report to the Institutional Administrative Supervisor, that the current standard operating procedures at the Terre Haute Special Confinement Unit are creating an aggravated physical and psychological impairing condition of confinement that is equivalent to torture." Therefore, the United States District Court misconstrued my complaint under an incompatible 8th Amendment Deliberate Indifference Claim. In the event, the United States District Court initially errored when it proclaimed that the Plaintiffs Claim could proceed under Bivens, and has now accurately

proclaimed and determined that the complaint cannot proceed under Bivens, then that failure by the United States District Court to accurately screen the complaint under 28. U.S.C. 1915 (a) adds an additional error that was committed by the United States District Court that requires a reversal of the the United States District Courts Order, which granted Motion for Summary Judgment to the Defendants. The elucidation why this error is grounds to reverse the United States District Courts Order, is because in document 53, and document 215, the United States District Court has been caught red-handed utilizing fraudulent and fallacious judiciary malfeasance that if undetected would cause any legitimate civil claim to be rendered illegitimate and inconsistent with the plumbline application of the law. What I'm literally saying is, the United States District Court has proclaimed and expressed in two documents, two statements, that could prevent any civil action from being successfully litigated by an incarcerated Pro Se litigant. The alarm and alert that I'm raising to the United States Court of Appeals is that its very difficult to prove prejudice and bias in civil cases brought by Pro Se incarcerated citizens. However, the evidence of this courts bias and prejudice is irrefutable, because of the text relayed in documents 53, and 215. Beginning with document 53, pg. I.D # 316, the United States District Court stated that,

" Mr. Council's claims against the Justice Department and the Federal Bureau of Prisons for Eighth Amendment violations which he alleges are currently identified as Slavery and Torture were dismissed because prisoners may not bring constitutional claims against a federal department or agency." In document 215 pg. I.D # 2080, the United States District Court stated, " The Court concludes, that Mr. Council's claims based on allegations that placement in the S.C.U. adversely impacted his mental health cannot proceed under Bivens. There is no Congressional authority to award damages against federal officials who violate the Constitution while acting under color of federal law." The dilema that the Courts verbatim statements represent is called "Gaslighting" which can be defined as - grossly misleading someone especially for one's own advantage. What I'm trying to humbly and respectfully relay to the Seventh Circuit Court is that the United States District Courts statements figuratively and literally absolve any Federal Department, Agency or Official from violating the Constitution of the United States while acting under color of Federal law. In the first statement, the United States District Court fallaciously proclaimed that my allegation pertaining to torture was dismissed because prisoners may not bring constitutional claims against a federal department or agency. Now, the United States District Court is dismissing my conditions

of confinement claim because this claim cannot proceed under Bivens. In document 195, pg. I.D # 1672, I reminded the court in my, "Memorandum Of Law In Support Of Motion For Summary Judgment" that under a Bivens Action, " Every person who under color of any statute, ordinance, regulation, custom or usage, of any state or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured, in an action at law, suit in equity, or proper proceeding for redress. The "Res Ispa Loquatur" documents prove bias and prejudice because the Court allowed my conditions of confinement claims to proceed under an inaccurate 6th Amendment Claim. So in the event, the United States District Court did utilize bias and prejudice against the Plaintiff by absolving any and all possible parties who have caused the violation of the plaintiff's Constitutional Right to be violated, the individual, or entity, can not be held liable if both the officials and the agency can not be held accountable. To further demonstrate irrefutable, and incontr-overtible evidence of the United States District Courts prejudice and bias towards the Plaintiff, that unequivo-cally proves this allegation, can be found in multiple

statements in the United States District Courts Order which granted to the defendants, Summary Judgment. Prejudice can be defined as - The act or state of holding unreasonable preconceived judgments or convictions; Irrational suspicion or hatred of a particular group, race, or religion and ; To affect injuriously or detrimentally by a judgment or an act. Bias is defined as - A preference or an inclination, especially one that inhibits impartial judgment. The word bias has also been defined and associated with systematically favoring some outcomes over others. Before I elaborate on the specific evidence which demonstrates presumptively bias and prejudicial improprities committed by the United States District Court, I would like to inform the United States Court of Appeals For The Seventh Circuit that I'm consciously aware that it is a common and systemic practice for United States District Courts to utilize immaterial and irrelevant information in their judiciary rulings to incite or inspire prejudice or bias towards Pro Se Plaintiffs who are currently or formerly incarcerated. In document 215, pg I.D # 2074, the United States District Court For The Southern District Of Indiana wasted no time revealing to any future appellate court that I was a death row prisoner, and that my sentence to death was later commuted. Although this information is factually

accurate, it is also factually prejudicial and intended to inspire bias, because neither of those facts are relevant in determining whether or not Summary Judgment is appropriately ordered, or if the allegations set forth in the complaint constitute a plausible or ascertain violation of the Constitution of the United States. The United States District Court presumptively expressed this information because the Court wanted its collegues and superiors to know prior to the courts elucidations why it was ruling the way it intended and purposefully ruled, was due to the Plaintiffs criminal offense, subsequent death sentence, and commutation to life imprisonment without the possibility of parole. The United States District Court would not fatuously admit to that assessment or conclussion, however, that information is unnecessary to reveal unless it is intended to provoke additional judiciary bias and prejudice. The United States District Court also signaled to future Jurist in the United States Court of Appeals For The Seventh Circuit that I'm party to another high profile controversial litigation which also has no bearing with this litigation. As it pertains to signaling the Seventh Circuit, the United States District Court stated in document 215 pg I.D. # 2082 that, "A case might differ in a meaningful way because of the rank of the officer involved, the constitutional right at issue, the

generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches, or the presence of potential factors that previous Bivens cases did not consider." As previously asserted, a Bias is a systematic favoring of some outcomes over others, and the use of this text by the United States District Court clearly demonstrates that there is a systemically perceived risk by certain members of the United States Judiciary into disruptively intruding into the functioning of other federally owned and operated branches, such as the Federal Bureau of Prisons. The silent and subtle signal was to caution other judiciary members about the unwritten, yet consistently whispered judiciary doctrine known as the "hands off rule", which pertains to United States Jurist staying away from controversial legal disputes that involve significant and complex prison conditions abuse allegations such as the two claims the United States District Court dismissed in Document 53, pertaining to Torture and Slavery, because to allow those claims to proceed in any

civil litigation, could potentially, or inevitably, result in a Judiciary Precedent or Supreme Court of the United States ruling which impedes and intrudes on how other branches of the Federal Government tree function. When you put these comments and statements made by the United States District Court together and you analyse them from a rational and impartial perspective its hard to see how this factual background couldn't be, or isn't prejudicially or biasly influential in an Appellate Courts review of the United States District Courts Order Granting the defendants Motion For Summary Judgment. If that so happens to not be compelling or convincing enough, the United States District Court also relayed in Document 215 pg I.D # 2085, "Here Council is essentially trying to use a claim for money damages to force a change in government policies related to placement in the S.C.U. and the conditions therein. There are ample reasons to conclude that "special factors" would not warrant expanding Bivens into this context." As previously asserted a Prejudice can be defined as -The act or state of holding unreasonable preconceived judgments and irrational suspicion. This verbatim text, articulated by the United States District Court, is a textbook example of the word prejudice because, nothing

that I have ever attempted to do in regard to this litigation vaguely or even remotely constitutes evidence of any attempt to force a change in government policies. This fallacious and mendacious argument or opinion made by the United States District Court proves once again the existence of either personal or systemic judiciary prejudice because it is impossible to accurately conclude that by my seeking compensatory damages that I'm trying to force a systemic change in the governments policy related to solitary confinement or the Federal Bureau of Prisons, Terre Haute, Special Confinement Unit. The United States District Court is well aware that to accomplish the task that he has imagined that I desire to accomplish, I would have to have entreated the United States District Court for an injunction to prohibit the United States Federal Government from utilizing psychologically and physically harmful prison conditions. As the United States District Court has articulated in its Order Granting Motion For Summary Judgment to the Defendants, there are multiple litigations currently pending in regard to the prison conditions at the U.S.P. Terre Haute Special Confinement Unit that vary in degree of allegations but those issues have never alleged or expressed what I have in regard to being unjustifiably and illegally tortured!

The United States District Court also prejudicially absolved the second defendant in this litigation by opinionating in, (Document 215 pg I.D # 2091) that, "No reasonable jury could conclude, based on this designated evidence, that Dr. Sacchetti was deliberately indifferent to Mr. Council's mental health needs. And because Dr. Sacchetti was not deliberately indifferent, it necessarily follows that Warden Watson could not have been deliberately indifferent in his role as a non-medical supervisory official." The United States District Courts aforementioned statement constitutes prejudice against the Plaintiff because Mr. Thomas J. Watson and Dr. Gina Sacchetti were parties to the complaint for entirely seperate reasons, and seeing as how the United States District Court inadvertently or intentionally miscontrued my argument, and complaint, it is indefensible for the United States District Court to absolve either defendant, or to expressly absolve Mr. Watson due to a speculation that no reasonable jury could conclude that Dr. Sacchetti was deliberately indifferent to Mr. Councils mental health needs. As stated in both the Second and Third Amended Complaints, in (Document 101 pg I.D # 486), "Mr. Watson is party to this complaint because <u>he</u> has failed

to provide an appropriate remedy to issues regarding physical and psychological harm pertaining to my current and ongoing conditions of solitary confinement. In (Document 101 pg I.D # 488), the complaint reads, "Mrs. Sacchetti is party to this complaint because she has failed to report to the Institutional Administrative Supervisors that the current standard operating procedures at the Terre Haute Special Confinement Unit are creating an aggravated physical and psychological impairing condition of confinement that is equivalent to torture." The United States District Court was obligated to screen my complaint honestly, and accurately, given the statements and allegations set forth in the Second and Third Amended Complaints, that would constitute only an Eighth Amendment Deliberate Indifference to a prison condition that subjects a prisoner to an unreasonable risk of harm claim. The United States District Court voluntarily asserted in (Document 100 pg I.D # 480), "Indeed once an official is alerted to an excessive risk to inmate safety or health through a prisoners correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." Both defendants were made aware of my subjection to torture in the form of indefinite placement in physical, and psychologically harmful conditions. Dr. Sacchetti

refused to relay to the Institutional Administrative Supervisor, Mr. Thomas J. Watson that the U.S.P. Terre Haute Special Confinement Unit's prison conditions were psychologically and physically harmful to myself and other prisoners. Mr. Watson was made aware of my allegation pertaining to torture because of the grievances I filed, and admitted in multiple interogatory responses that my grievances didn't result in any change in the U.S.P Terre Haute Special Confinement Unit policies or procedures, which ambiguously construed, admits to the allegations set forth in the Second and Third Amended Complaints that contend Mr. Watson failed to provide an appropriate remedy to issues regarding physical and psychological harm pertaining to my current and ongoing conditions of solitary confinement. Before I continue any further, I would like the United States Court of Appeals to be aware that I informed the United States District Court in (Document 194 pg I.D # 1662 and 1663), that, "In support of granting the Plaintiff's motion for summary judgment the Plaintiff asserts that there is no dispute amongst the parties of the complaint pertaining to the policy and procedure at the Terre Haute Special Confinement Unit, that utilizes what is commonly known and refered to as solitary confinements. Secondly, neither defendant can demonstrate by preponderance of evidence, or by the

relation between fact and reality, that the Plaintiffs conditions of confinement did not amount to torture, or that the Plaintiff's prison conditions were not psychologically and physically harmful. Nor can either of the defendants demonstrate that the plaintiffs subjection to physically and psychologically harmful conditions of confinement was authorized by any United States Federal law or United States Constitutional statute. The elucidation why I'm bringing this to the Seventh Circuits attention in this brief is because I want to demonstrate exactly what I believe the United States District Court turned a blind eye to. which is my subjection to an explicitly prohibited act of torture and my awareness that the United States penological system is not authorized to utilize physically and psychologically harmful prison conditions. I admit to arguing this case the way the United States District Court wanted it to be argued, under the 8th Amendment Deliberate Indifference to a Serious medical need, because this assessment was the only theory that I was allowed to present my case under, but now that the United States District Court has disregarded and deliberately failed to review my psychology records that demonstrate several disputes to a material fact and has prejudicially ruled against me because of immaterial factual background I must bring to light the United States District Courts errors and prejudicial bias in hope that the evidence within this brief will cause

the United States Court of Appeals for the Seventh Circuit to reverse the United States District Court. In jest I say this, but did not the United States District Court Order in its Final Judgment that, "The action is dismissed with prejudice." I believe god works in mysterious ways, and here lies unequivocal proof of the United States District Courts Prejudice. In conclussion in (Document 215 pg I.D # 2091), the United States District Court enumerated 5 explications as to why the defendants were both being absolved of civil liability, and why the United States District prejudicially awarded them Summary Judgment. In rebuttal I would like to say to explication # 1 That, "Dr. Sacchettis inability to prescribe medication has nothing to do with her ability to inform the U.S.P. Terre Haute Special Confinement Unit Institutional Administrative Supervisor, that the conditions she witnessed me being housed in were and are physically and psychologically harmful, and the indefinite time the plaintiff would be housed in those conditions is what aggravated the circumstances to constitute torture. As to explication # 2 that, "Dr. Sacchetti conducted numerous, regularly scheduled psychological evaluations of Mr. Council," I would like to say that my psychology records unequivocally demonstrate that I was never evaluated - which means tested, and the specific allegation

was in reference to being psychologically evaluated to receive psychological medication, which once again my psychology records show no documentation of being evaluated / tested for that specific purpose as alleged in (Document 101 pg I.D # 488.) As it pertains to explication # 3 that Dr. Sacchetti brought up Mr. Council's desire for medication with U.S.P. - Terre Haute Medical Staff, the evidence I cited in my Brief Opposing the defendants Motion For Summary Judgment demonstrated that the document the defendant created titled, "Consultation - Health Services is fraudulent because there is no Medical Record on December 21st 2021 that alleges or confirms transmission of the Plaintiff's desire to receive psychological medication because the fabricated document was not transmitted anywhere it is a psychology record, and it was never forwarded to anyone, anywhere. In regards to explication # 4 that, "Mr. Council never attempted to obtain psychiatric medication from a qualified medical provider, despite acknowledging he could have done so, my rebuttal is this lawsuit isnt about my desire to receive psychological medication and the United States District Court and the Assistant United States Attorney who represented the defendants made this litigation about psychological medication instead of the actual allegations set forth in the complaint which explicitly describe why each defendant

is party to this complaint. The United States District Courts final elucidation in explication # 5 is, "its unclear how serious Mr. Council's mental health issues were especially given his lack of a psychiatric diagnosis or ever having taken psychiatric medication before entering prison and his assignment to the B.O.P.'s lowest-level mental health code. In summation of this Brief it is ascertain that the United States District Court refused or failed to see this litigation the impartial way. The United States District Courts use of dissimulation to deceive others is the verbatim textbook definition of "gaslighting", which means to grossly mislead someone especially for ones own advantage. Had the United States District Court read my cited materials specifically in my Motion For Summary Judgment in (document 195-1 pg I.D # 1719, 1720, and 1721) the United States District Court would know exactly how clear and serious my mental health issues are and my specifically made request to Terre Haute Health Services to be examined for E.E.G. and abnormal brain patterns and dysfunction in Document 195-1 pg I.D # 1724. which was evidence of my attempt to be medically examined. Although this rebuttal evidence was submitted to the United States District Court in my Motion For Summary Judgment the

United States District Court failed to see it impartially or apply it to refute the defendants Motion For Summary Judgment. As previously inculcated, none of the explications in (Document 215, pg. I.D. # 2091) have any bearing to the accurate or appropriate assimilation of the Third Amendment Complaints allegations. The United States District Court inadvertently misconstrued my complaint or intentionally manipulated its analysis which would automatically constitute prejudice or bias towards the Plaintiff, that caused injury to the Plaintiffs litigation. I earnestly and emphatically entreat the United States Court of Appeals For The Seventh Circuit to reverse the United States District Courts Order granting the defendants Motion For Summary Judgment because they were not entitled to Summary Judgment as a matter of law, the court misinterpreted my complaint under an incompatible 8th Amendment Claim and the United States District Court utilized presumptively prejudicially biased information and jurisprudence doctrine to divest me of judiciary relief that I am qualified and entitled to according to the Federal Rules of Civil Procedure and the Constitution of the United States.

Respectfully Submitted : 9-10-26

Brandon M. Council / 63961056
U.S.P. Terre Haute
P.O. Box 33
Terre Haute, IN, 47808

# UNITED STATES SEVENTH CIRCUIT COURT OF APPEALS

Brandon M. Council )
Plaintiff - Appellant )
)
V. ) No. 26-1772
)
Thomas J. Watson )
Gina Sacchetti )
Defendants - Appellees )

U.S.C.A. — 7th Circuit
RECEIVED
SEP 18 2026

# APPELANT APPENDIX

1. Third Amended Complaint - Document 101, pg I.D # 483 - 490.

2. Plaintiffs Psychology Records - Document 188-7, pg I.D # 1071 - 1146.

3. Order Granting Motion To Verify Third Amended Complaint - Document, 100 pg. I.D # 475

4. Order Granting Defendants Motion For Summary Judgment - Document, 215 pg. ID # 2072 - 2092

# APPELANT APPENDIX

5. Plaintiffs Brief In Opposition Of Defendants Motion For Summary Judgment - Document 199, pg I.D # 1950 - 1972

6. Plaintiffs Appeal To Reverse United States District Court Ruling - Document 2, Case 26-1772

7. Federal Rules of Civil Procedure Rule 56 (a)

8. United States District Court For The Southern District Of Indiana Terre Haute Division Local Rule 56-1 (b) Non-Movants Obligations.

9. United States District Court Order Denying the Plaintiffs Motion For Default Judgment. - Document 215, pg I.D # 2074

10. United States District Court Order Denying the Plaintiffs Motion To Reconsider. - Document 53, pg. I.D # 316

11. Statement Of Facts Affidavit - Document 199, pg. I.D # 1974

12. Statement Of Facts Affidavit - Document 199, pg. I.D # 1975

# APPELANT APPENDIX

13. Statement of Facts Affidavit - Document 199, pg. I.D # 1976

14. Plaintiffs Motion For Default Judgment - Document 205, pg I.D # 2010 - 2011

15. Plaintiffs Memorandum Of Law In Support Of Motion For Summary Judgment - Document 195, pg I.D # 1672 - 1697

16. United States District Courts Order Denying Plaintiffs Motion To Reconsider - Document 53, pg. I.D. # 53

17. Document 195-1 pg I.D # 1724

18. Document 195-1 pg I.D # 1719

19. Document 195-1 pg I.D # 1720

20. Document 195-1 pg I.D # 1721

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRANDON MICHAEL COUNCIL,<br><br>Plaintiff,<br><br>v.<br><br>GINA SACCHETTI Dr.,<br>THOMAS J. WATSON Warden,<br><br>Defendants. | ) | No. 2:21-cv-00302-JPH-MKK |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Brandon Council alleges that Defendants were deliberately indifferent to his serious mental health needs while he was an inmate in the Special Confinement Unit ("SCU") at United States Penitentiary – Terre Haute ("USP – Terre Haute"). Mr. Council and Defendants have each moved for summary judgment. Dkts. [188], [194]. For the reasons below, Mr. Council's motion is **DENIED** and the Defendants' motion is **GRANTED**.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

Mr. Council also filed a motion for "default judgment," arguing Defendants failed to respond to his summary judgment motion. Defendants' motion for summary judgment, however, responds to Mr. Council's arguments. And regardless, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

Mr. Council's motion for "default judgment" is **DENIED**. Dkt. [205].

## II.
## Factual Background

### A. Parties

In 2019, Mr. Council was sentenced to death after a jury found him guilty of bank robbery resulting in death and using and carrying a firearm during and in relation to a crime of violence in a manner causing death. *See United States v. Council*, 77 F.4th 240 (4th Cir. 2023). Mr. Council's death sentence was later commuted to a life sentence without the possibility of parole. *See* https://www.justice.gov/pardon/media/1382291/dl?inline.

The SCU at USP – Terre Haute houses federal inmates who have been sentenced to death. Dkt. 188-1 ¶ 5 (Watson declaration). Mr. Council appears to remain housed at USP – Terre Haute in the SCU. *See* https://www.bop.gov/inmateloc/ (last visited March 17, 2026).[1]

[1] The current administration is attempting to move Mr. Council and others whose death sentences were commuted to ADX – Florence, the Bureau of Prison's supermax prison in Colorado. Mr. Council and others are pursuing a lawsuit to prevent such a move. *See*

At all times relevant to the allegations in Mr. Council's complaint, Thomas Watson was the Complex Warden for the Federal Correctional Complex – Terre Haute, which includes USP – Terre Haute, dkt. 188-1 ¶ 1, and Dr. Gina Sacchetti was a staff psychologist at USP – Terre Haute, dkt. 188-6 ¶¶ 2, 6 (Sacchetti declaration). Dr. Sacchetti previously served as the primary staff psychologist between March 2021 and January 2023. *Id.*

**B. Facts**

The decision to house Mr. Council in the USP – Terre Haute SCU, as with other federal death row inmates, was made by the Bureau of Prison's ("BOP") Designation and Sentence Computation Center in Texas, not by USP – Terre Haute officials. Dkt. 188-1 ¶ 6. USP – Terre Haute officials promulgate policies governing SCU conditions and operations. *Id.* ¶ 8. Those policies were modified during the COVID pandemic to reduce the risk of disease transmission. *Id.* ¶ 7.

Under applicable policies for the SCU, (1) a staff psychologist must perform an initial psychological assessment within 14 days of an inmate's assignment to the SCU; and (2) "mental status examinations" must occur every 30 days thereafter; and (3) a staff psychologist should assist inmates with problems and provide individual counseling as needed. Dkt. 188-2 at 8 ("Operation and Security of the Special Confinement Unit (SCU)"). SCU inmates in "Phase I," the

*Taylor et al. v. Trump et al.*, No. 1:25-cv-3742-TJK (D.D.C.). On February 11, 2026, the District Court for the District of Columbia entered a preliminary injunction prohibiting the transfer of Mr. Council and the other plaintiffs to ADX while that suit proceeds. *Id.* at dkt. 70.

strictest security level, are allowed 5 hours a week out-of-cell recreation time and access to the law library. Dkt. 188-2 at 10, 15.

On November 6, 2019, Mr. Council underwent a psychological intake screening performed by a non-defendant. Dkt. 188-7 at 75-76 (Mr. Council's psychology records). Although Mr. Council self-reported a prior episode of suicidal thoughts when he was 11 or 12, he stated that he had never previously been diagnosed with a mental illness as an adult or that he had received any psychiatric medications. *Id.* at 75; dkt. 189 at 116. The psychologist gave Mr. Council a "Care Level" of "CARE1-MH." Dkt. 188-7 at 76. This is the BOP's lowest-level mental health designation. Dkt. 189 at 124.

USP – Terre Haute psychology staff perform weekly walkthroughs in the SCU. Dkt. 189 at 121. Records related to Mr. Council reflect that Dr. Sacchetti evaluated Mr. Council on January 12, 2022 (30-day SCU review), December 22, 2021 (at Mr. Council's request), December 8, 2021 (SCU review plus consultation at Mr. Council's request), November 3, 2021 (SCU review), October 27, 2021 (at Mr. Council's request), October 13, 2021 (at Mr. Council's request), October 6, 2021 (SCU review), September 22, 2021 (at Mr. Council's request), September 1, 2021 (SCU review), August 25, 2021 (at Mr. Council's request), August 4, 2021 (SCU review plus consultation at Mr. Council's request), July 7, 2021 (SCU review), June 8, 2021 (SCU review), May 19, 2021 (SCU review plus consultation at Mr. Council's request), April 7, 2021 (SCU review plus consultation at Mr. Council's request), March 16, 2021 (at Mr. Council's request), and March 3, 2021 (SCU review plus consultation at Mr. Council's request). Dkt. 188-7 at 1-39.

During several visits with Dr. Sacchetti and other mental health providers, Mr. Council stated that his conditions of confinement in the SCU amounted to "torture" and cruel and unusual punishment and were causing him mental health problems. *See, e.g.*, *id.* at 33. Dr. Sacchetti advised Mr. Council to direct his concerns about the conditions of his confinement, including the limited amount of out-of-cell time, to other USP – Terre Haute staff. *Id.* Otherwise, she attempted to provide Mr. Council with various psychological coping skills. *Id.*

Mr. Council also discussed with Dr. Sacchetti on several occasions the possibility of his taking psychiatric medication. Dr. Sacchetti repeatedly explained to Mr. Council that, as a psychologist and not a psychiatrist, she could not prescribe medications. Dkt. 189 at 147-49. She more than once encouraged Mr. Council instead to put in a sick call request to USP – Terre Haute Health Services if he wished to explore taking medication. Dkt. 188-7 at 26, 14; dkt. 189 at 190-93.

On October 27, 2021, Dr. Sacchetti advised Mr. Council that he could bring up the topic of possibly taking psychiatric medication when he had his upcoming chronic care appointment with a physician. Dkt. 189 at 172-73. During that appointment with Dr. William Wilson on November 5, 2021, however, Mr. Council did not mention psychiatric medication. *Id.* at 201. During his deposition, Mr. Council testified that he did not know at that time that he could do so.[2] *Id.* at 201.

[2] Also, even though Mr. Council claims he later became aware that Dr. Wilson could prescribe psychiatric medications, he has never asked Dr. Wilson to do so. *Id.* at 67.

Also in the fall of 2021, Dr. Sacchetti raised Mr. Council's concerns about the SCU conditions of confinement to the USP – Terre Haute Chief Psychologist. Dkt. 188-6 ¶ 12. And in December 2021, she contacted USP – Terre Haute Health Services to make them aware of Mr. Council's request for psychiatric medication.[3] *Id.*; dkt. 188-7 at 4.

Besides Dr. Sacchetti, Mr. Council never sought or discussed obtaining psychiatric medication with any psychological provider. *See* Dkt. 189 at 130, 151-52.

Mr. Council submitted grievances to Warden Watson about the SCU conditions and the psychological harm they were causing him, but the grievances did not result in any change in those conditions. Dkt. 195-1 at 4-5.

**C. Procedural History**

Mr. Council filed this action on August 2, 2021. Dkt. 1. The Court screened and dismissed the original complaint and gave Mr. Council the opportunity to amend. Dkt. 10. Mr. Council filed an amended complaint, which the Court also deemed subject to dismissal because he failed to sign it but gave him another opportunity to amend. Dkts. 19, 20. On October 28, 2021, Mr. Council filed his second amended complaint. Dkt. 21. Upon screening it, the Court concluded:

[3] Mr. Council asserts Dr. Sacchetti must be lying about these discussions, and/or that any documentation indicating a discussion took place must be a forgery. *See* dkt. 199 at 13-15. Mr. Council has no personal knowledge or evidence, however, to support this speculation. He notes that the designated medical records do not contain a cross-reference from medical staff mentioning whether Dr. Sacchetti had talked to anyone about his desire for psychiatric medication. The absence of such cross-documentation does not contradict Dr. Sacchetti's sworn statement or the documentation in the psychology records that she did have that discussion.

> Liberally construed, the second amended complaint states a claim against Warden Watson and Dr. Sacchetti for deliberate indifference to a serious medical need. Specifically, the second amended complaint alleges that prolonged solitary confinement has aggravated Mr. Council's mental health issues, that these defendants are aware of those issues, but that they have not taken steps within their authority to alleviate those issues—such as removing him from solitary confinement, reporting the effect of solitary confinement on his mental health, or ensuring that he be evaluated for medication by a psychiatrist.

Dkt. 23 at 3.

Mr. Council filed a third amended complaint seeking $100 million in damages. Dkt. 101 at 7. The Court screened the third amended complaint and concluded, "Mr. Council's Eighth Amendment damages claims alleging deliberate indifference to a serious medical need shall proceed against Warden Watson and Dr. Sacchetti in their individual capacities under the theory set forth in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and *Carlson v. Green*, 446 U.S. 14 (1980)." Dkt. 100 at 6.

On June 13, 2023, this action was stayed while Mr. Council pursued a direct appeal of his convictions and sentence. Dkt. 119. On October 29, 2024, the stay was lifted after the Supreme Court denied certiorari from the Fourth Circuit's affirmance of Mr. Council's convictions and sentence, thus ending the direct appeal process. Dkt. 149.

On May 1, 2025, Mr. Council filed a motion for summary judgment. Dkt. 194. On May 2, 2025, Defendants filed a motion for summary judgment. Dkt. 188.

## III.
## Discussion

Mr. Council presents two categories of claims: (1) the conditions of confinement in the Terre Haute – USP SCU were damaging to Mr. Council's mental health and Defendants' failure to change those conditions or move Mr. Council out of the SCU violated the Eighth Amendment; and (2) the mental health treatment he received in the SCU was inadequate and amounted to deliberate indifference in violation of the Eighth Amendment.

### A. Conditions of Confinement

Defendants argue that Mr. Council's claim based on his placement in the SCU adversely impacting his mental health cannot proceed under *Bivens*. Mr. Council's only response is that this Court allowed *Bivens* claims to proceed at screening. *See* dkt. 199 at 7. But screening orders are not final orders, and the Court may reconsider them under Federal Rule of Civil Procedure 54(b). *See Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). The Court concludes that Mr. Council's claim based on allegations that placement in the SCU adversely impacted his mental health cannot proceed under *Bivens*.

There is no Congressional authority to award damages against federal officials who violate the Constitution while acting under color of federal law. *Ziglar v. Abbasi*, 582 U.S. 120 (2017). Fifty years ago, the Supreme Court held in *Bivens* that district courts have the implied authority to award damages against federal officials for unreasonable searches and seizures in violation of the Fourth Amendment. 403 U.S. at 397. That implied authority was extended twice: first,

to actions alleging gender discrimination in federal employment in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and second, to actions alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). But these "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131.

In the past four decades, the Court has declined to create any new contexts for *Bivens* claims. *Egbert v. Boule*, 142 S. Ct. 1793, 1799-1800 (2022) (listing cases). Expanding *Bivens* to a new context is a "disfavored judicial activity." *Ziglar*, 582 U.S. at 135.

To determine whether a *Bivens* remedy is available to a plaintiff suing a federal actor, the Court makes a two-step inquiry. First, it asks whether the claim presents a new *Bivens* context by determining whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Ziglar*, 582 U.S. at 139. Second, if the claim presents a new *Bivens* context, the Court then asks whether there are any special factors that counsel hesitation about extending a damages remedy to the new context. *Egbert*, 142 S. Ct. at 1803.

**1. "New Context"**

*Carlson* extended a *Bivens* remedy to the context of an Eighth Amendment claim based on deliberate indifference to a serious medical need. However, "[a] claim may arise in a new context even if it is based on the same constitutional

provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 140.

In *Ziglar*, the Supreme Court held that Fifth Amendment due process claims by suspected terrorist detainees alleging they were subjected to unconstitutional conditions of confinement bore "little resemblance" to the claims in *Bivens*, *Davis*, or *Carlson*, and therefore presented a "new context". Since then, several courts have applied *Ziglar* to foreclose *Bivens* conditions of confinement claims arising under the Eighth Amendment, including claims related to prolonged placement in solitary confinement. *See, e.g.*, *Cohen v. Trump*, 2024 WL 20558 at *3 (2nd Cir. Jan. 2, 2024), *cert. denied* (declining to extend *Bivens* to Eighth Amendment claim of unconstitutional conditions of solitary confinement); *Mammana v. Barben*, 856 F. App'x 411, 414 (3d Cir. May 21, 2021) (Eighth Amendment allegation of "deliberate indifference" to prisoner's welfare based on confinement in segregation bore "little resemblance" to *Carlson*'s medical deliberate indifference claim); *Tate v. Harmon*, 54 F.4th 839, 847 (4th Cir. 2022) (Eighth Amendment claim of unconstitutional conditions of

confinement in segregation unit was a *Bivens* "new context"); *Sebolt v. Tyndall*, 2021 WL 4948959 (S.D. Ind. Oct. 25, 2021) (inmate's claim of unconstitutional conditions of confinement in USP – Terre Haute segregation unit presented new *Bivens* context).

In *DeBenedetto v. Salas*, 2023 WL 6388127 (N.D. Ill. Sept. 29, 2023), the plaintiff alleged that while placed in a segregation unit in a federal prison, he "experienced significant mental health issues and his psychological condition deteriorated." His lawsuit alleged that the defendants violated his Eighth Amendment rights by subjecting him "to prolonged solitary confinement despite their knowledge of his serious mental illness and that the confinement exacerbated his mental health issues . . . ." *Id.* at * 2. The court found that this claim presented a new *Bivens* context, rejecting the plaintiff's argument that his claim should proceed under *Carlson*. "While DeBenedetto's allegation about prolonged solitary confinement might be construed as an attempt to raise a claim for deliberate indifference to serious mental health problems, which is somewhat similar to *Carlson*, the claim still presents a new context because DeBenedetto does not allege that the conditions of his solitary confinement caused him to receive inadequate medical care or that he was denied medical treatment." *Id.* at * 6. In other words, the relevant "'mechanism of injury'" was the conditions of confinement, not deliberate indifference to medical needs. *Id.* (quoting *Cohen v. United States*, 640 F. Supp.3d 324, 338 (S.D.N.Y. 2022), *aff'd*, 2024 WL 20558 (2nd Cir. 2024)).

The Court finds *DeBenedetto*'s reasoning persuasive in concluding that Mr. Council's claim presents a new *Bivens* context. A conditions-of-confinement claim very often has as an underlying factor the psychological and/or mental harm that such conditions cause an inmate. *See Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012) (explaining that purely psychological injuries may support an Eighth Amendment conditions of confinement cause of action under the Prison Litigation Reform Act for injunctive relief, nominal damages, and punitive damages). Concluding that that a claim alleging that a prisoner has suffered psychologically from conditions of confinement is identical to *Carlson* would represent an expansion of *Bivens*. Mr. Council's claim essentially alleges that being confined in the SCU is in and of itself an Eighth Amendment violation and therefore presents a new *Bivens* context. Mr. Council's allegations that his confinement in the SCU directly impacted his mental health does not change the outcome.

**2. "Special Factors"**

In applying this factor, a district court "faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805 (emphasis in original) (cleaned up). Additionally, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 1804 (quoting *Ziglar*, 582 U.S. at 137). And this is true even if the individual plaintiff alleges that he does not have access to the alternative remedy. *Id.* at 1807 ("whether a

given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts").

The BOP's administrative remedy process, 28 C.F.R. § 542.10 *et seq.*, provides inmates with the ability to seek formal review of any complaint related to the conditions of their confinement. Additionally, in *Ziglar*, the Supreme Court recognized the availability of injunctive relief to address conditions-of-confinement claims such as Mr. Council's. 582 U.S. at 144. Indeed, a fellow inmate, represented by the American Civil Liberties Union, is pursuing class action injunctive relief related to the USP – Terre Haute SCU conditions of confinement. *Kadamovas v. Director, Federal Bureau of Prisons*, 2:23-cv-00022-MPB-MKK (S.D. Ind.). And to the extent injunctive relief cannot make Mr. Council whole for any past injuries, the Federal Tort Claims Act allows for the recovery of damages against the United States under certain circumstances where federal agents, including prison officials, commit a state-law tort against an inmate. Additionally, when Congress passed the Prison Litigation Reform Act in 1995, it did not expand the availability of *Bivens* actions against federal officials. *See Sargeant v. Barfield*, 87 F.4th 358, 367-68 (7th Cir. 2023). Furthermore, "[w]ith respect to . . . claims against . . . Executive Officials, it must be noted that a *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Ziglar*, 582 U.S. at 140 (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

Here, Mr. Council is essentially trying to use a claim for money damages to force a change in government policies related to placement in the SCU and the

conditions therein. There are ample reasons to conclude that "special factors" would not warrant expanding *Bivens* into this context. Defendants are therefore entitled to summary judgment with respect to Mr. Council's claims that his initial and continuing placement in the SCU in and of itself violated the Eighth Amendment.

**B. Deliberate Indifference to Serious Medical Needs**

Mr. Council's remaining claim is based on allegations that federal officials were deliberately indifferent to his serious mental health needs. Defendants argue that this claim cannot proceed under *Bivens* because Mr. Council's alleged medical needs are not comparably serious to those that existed in *Carlson*. The Seventh Circuit recently explained, however, that claims generally may proceed under *Bivens*/*Carlson* if they "arise from allegedly constitutionally inadequate medical care in a federal prison . . . ." *Watkins v. Mohan*, 144 F.4th 926, 934 (7th Cir. 2025). The fact that a particular plaintiff's inadequate medical care was not related to a medical emergency does not place it outside *Carlson*. *Id.* at 935. The Court concludes that Mr. Council's claim alleging deliberate indifference to his mental health needs may proceed under *Bivens* and proceeds to address the merits of Defendants' motion for summary judgment.

Although this case arises under *Bivens*, the Eighth Amendment deliberate indifference standard is identical to the standard applied in state prisons for cases arising under 42 U.S.C. § 1983. *See id.* at 937-38 (noting for qualified immunity purposes that federal prison medical and correctional staff "can consult decades of circuit precedent applying the deliberate-indifference

standard" in state prisons and county jails, in addition to federal prisons). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a [prison] official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Council's mental health condition was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Council]'s health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). Still, the alleged seriousness (or not) of Mr. Council's mental health condition is relevant in determining whether Defendants were deliberately indifferent to that condition.

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Council "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference

must be inferred from the propriety of their actions." *Dean*, 18 F.4th at 241 (internal citations omitted).

The Seventh Circuit has held that deliberate indifference occurs when a medical provider defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

Here, Mr. Council does not challenge the quality of Dr. Sacchetti's psychological care but alleges solely that she should have done more to help him obtain a prescription for psychiatric medication. Mr. Council does not dispute that Dr. Sacchetti repeatedly advised him that she could not prescribe such medication and that if he wanted to try it, he would need to contact another medical provider through USP – Terre Haute Health Services. And, despite that knowledge, Mr. Council has never reached out to another medical provider requesting a psychiatric medication prescription, with one possible very limited

exception.[4] Furthermore, Mr. Council stated in his March 2025 deposition that he does not think any such prescription would be of much use anyway because his mental health problems stem from the SCU conditions of confinement. Mr. Council also does not dispute that he had never taken psychiatric medication or been diagnosed with a psychiatric illness before entering prison, nor that he was given the lowest-possible mental health code under BOP policy. *See* dkt. 189 at 116, 124.

Mr. Council also claims Dr. Sacchetti was required to perform an "initial psychological examination" upon him before another medical provider would or could consider prescribing medication to him and she failed to do so. *See, e.g.*, Dkt. 188-9 at 11. Although the record is clear that Dr. Sacchetti did repeatedly evaluate him – at least once a month, as required by policy for the SCU, and often more – he contends that these evaluations were insufficient to begin the process of him being placed on psychiatric medication. He instead argues that there should have been "testing," but designates no evidence regarding what type of "test" or "tests" should have been done. Nor does he argue that Dr. Sacchetti's evaluations were inadequate.

To prevail on a deliberate indifference medical care claim, "[i]t is not enough that the plaintiff simply believes the treatment was ineffective or disagrees with the doctor's chosen course of treatment. The challenged plan

[4] In an interrogatory response, Mr. Council stated that he asked an "unknown nurse" about receiving medication, but after she told him he needed to "put in a cop-out to the Psychology department . . . I ended all attempts to acquire psychological medication." Dkt. 188-9 at 11.

must deviate so substantially from accepted professional judgment that no reasonable physician would reach the same judgment." *Thomas v. Martina*, 991 F.3d 763, 772 (7th Cir. 2021) (cleaned up). Mr. Council has designated no such evidence here. Mr. Council is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* Here, Mr. Council designates no evidence showing that Dr. Sacchetti should have done something differently in responding to Mr. Council's requests for psychiatric medication.

Last, Mr. Council challenges Dr. Sacchetti's sworn assertion, supported by documentation in his psychology records, that she brought up his requests for medication with the USP – Terre Haute medical staff. *See* dkts. 199 at 13-15 (Mr. Council's summary judgment response brief); 188-6 ¶ 12 (Sacchetti declaration); dkt. 188-7 at 4 (psychology records). Mr. Council's challenges, however, even if they are based on sworn assertions,[5] are not based on personal knowledge as required by Fed. R. Civ. P. 54(c)(4). "[A]lthough personal knowledge may include reasonable inferences, those inferences must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (cleaned

---

[5] Mr. Council testified during his deposition that he did not believe Dr. Sacchetti spoke with or contacted medical staff. Dkt. 189 at 177-78.

up). Mr. Council's challenges on this point are speculative and conclusory and therefore insufficient to rebut Dr. Sacchetti's sworn declaration and the corroborating psychology records. *See White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non-movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor") (cleaned up).

In sum, the designated evidence shows that (1) Dr. Sacchetti repeatedly advised Mr. Council that she could not prescribe psychiatric medication and that he would need to discuss his desire for medication with medical staff; (2) Dr. Sacchetti conducted numerous, regularly scheduled psychological evaluations of Mr. Council and treated him in accordance with her training; (3) Dr. Sacchetti brought up Mr. Council's desire for medication with USP – Terre Haute medical staff; (4) Mr. Council never attempted to obtain psychiatric medication from a qualified medical provider, despite acknowledging that he could have done so; (5) it is unclear how serious Mr. Council's mental health issues were, especially given his lack of a psychiatric illness diagnosis or ever having taken psychiatric medication before entering prison and his assignment to the BOP's lowest-level mental health code.

No reasonable jury could conclude, based on this designated evidence, that Dr. Sacchetti was deliberately indifferent to Mr. Council's mental health needs. And, because Dr. Sacchetti was not deliberately indifferent, it necessarily follows that Warden Watson could not have been deliberately indifferent in his

role as a non-medical supervisory official.[6] *See McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (non-medical prison official can rely on the expertise of medical personnel unless there is evidence official was aware medical personnel were mistreating or not treating an inmate). Defendants are entitled to summary judgment on Mr. Council's deliberate indifference claims.

**IV. Conclusion**

Mr. Council's motions for summary judgment and for default judgment are **DENIED**. Dkts. [194], [205]. Defendants' motion for summary judgment is **GRANTED**. Dkt. [188]. Final judgment consistent with this Order and the Court's orders screening the second and third amended complaints, dkts. [23] and [100], will issue separately.

**SO ORDERED.**

Date: 3/17/2026

James Patrick Hanlon
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

BRANDON MICHAEL COUNCIL
63961056
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

[6] The Court need not address Defendants' argument that they are entitled to qualified immunity on all of Mr. Council's claims.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRANDON MICHAEL COUNCIL,

Plaintiff,

v.

MERRICK GARLAND US Attorney General, United States Department of Justice,
JEFF SESSIONS Former US Attorney General,
R. BRYAN HARWELL US District Court Judge,
NATHAN WILLIAMS Assistant US Attorney,
EVERETT MCMILLAN Assistant US Attorney,
DEREK SHOEMAKE Assistant US Attorney,
GINA SACCHETTI Dr.,
THOMAS J. WATSON Warden,

Defendants.

---

UNITED STATES OF AMERICA,

Interested Party.

No. 2:21-cv-00302-JPH-MKK

**FINAL JUDGMENT**

The Court, having this day made its Order directing the entry of final judgment, now enters **FINAL JUDGMENT**. The action is **dismissed with prejudice**.

Date: 3/17/2026

James Patrick Hanlon
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Kristine L. Seufert, Clerk

BY: Carina Weed
Deputy Clerk, U.S. District Court

Distribution:

All ECF-registered counsel of record via email

BRANDON MICHAEL COUNCIL
63961056
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808